UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:24-CV-00095-RSE

**Robin H.**  PLAINTIFF

VS.

**MARTIN O'MALLEY,**
*Commissioner of Social Security*[1]  DEFENDANT

**MEMORANDUM OPINION
AND ORDER**

The Commissioner of Social Security denied Claimant Robin H.'s application for disability insurance benefits and supplemental security income benefits. Claimant presently seeks judicial review of the Commissioner's denial pursuant to 42 U.S.C. § 405(g). Both Claimant (DN 13; DN 14) and the Commissioner (DN 16) have filed a Fact and Law Summary. Claimant did not file a reply brief. The Parties have consented, under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed. (DN 11).

I. Background

Robin H. ("Claimant") applied for disability insurance benefits under Title II of Social Security Act and supplemental security income benefits under Title XVI of the Social Security Act on November 15, 2019. (Transcript ("Tr.") 771). The applications alleged Claimant's

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Federal Rule of Civil Procedure 25(d), Martin O'Malley is substituted for Kilolo Kijakazi as Defendant in this case.

disability began on July 20, 2015[2] due to "Ptsd [sic], major [d]epression, anxiety, ocd [sic], bipolar, dvt [sic], bile reflux, migraines, add [sic], [and] nerve damage." (Tr. 771-72, *see* Tr. 954, 958). Claimant's applications were denied at the initial and reconsideration levels. (Tr. 841-55).

At Claimant's request, Administrative Law Judge Davida Isaacs ("ALJ Isaacs") conducted a hearing in Campbellsville, Kentucky, on January 4, 2021. (Tr. 57-78). Claimant, who was not represented, appeared by telephone.[3] (*Id*.). An impartial vocational expert also participated in the hearing. (*Id*.).

On August 30, 2021, ALJ Isaacs issued an unfavorable decision finding that Claimant was not disabled. (Tr. 811-25). Applying the five-step sequential evaluation process promulgated by the Commissioner, 20 C.F.R. § 404.1520(a), ALJ Isaacs determined that, while Claimant had severe impairments of post-traumatic stress disorder ("PTSD"), depression, anxiety, and attention deficit hyperactivity disorder ("ADHD"), she still retained the residual functional capacity ("RFC") to perform medium work with no exertional or manipulative limitations but additional environmental and mental limitations. (*Id*.). ALJ Isaacs described Claimant's migraines as a non-severe impairment, explaining that "while the record support[s] that the claimant had a significant period of time after the alleged onset date during which she suffered from severe migraines, the evidence does not support that such migraines lasted for more than twelve months." (Tr. 816 (emphasis removed)).

Claimant filed a request for review with the Appeals Council, which was granted, and the Appeals Counsel issued an order remanding the claim back to ALJ Isaacs on September 7, 2022.

---

[2] The Claimant's Brief, the Commissioner's Fact and Law Summary, and the ALJ decisions state the alleged disability began on January 30, 2016. (DN 13, at PageID # 4442; DN 16, at PageID # 4466; Tr. 15, 811; *see* Tr. 884, 935, 967, 979). This discrepancy is inconsequential to the case. Agency regulations preclude the receipt of SSI benefits for any month prior to that in which she filed her application. *See* 20 C.F.R. § 416.335. Accordingly, the period relevant of the determination of Claimant's SSI claim falls between November 15, 2019, the date upon which she filed that claim, and May 11, 2023, the date of the ALJ's final decision. *Id.*
[3] The hearing was conducted telephonically because of the COVID-19 pandemic. (Tr. 59).

(Tr. 831-34). The Appeals Counsel stated that "[r]emand is needed to explain the claimant's ability to interact with others" and that "[f]urther explanation is needed" to state the parameters of Claimant's limitation to "jobs not involving fast-pace [sic] tasks (as defined in the hearing)." (Tr. 833).

On March 1, 2023, ALJ Isaacs convened a remand hearing in Campbellsville, Kentucky, as contemplated by the Appeals Council's remand order. (Tr. 35-49; *see* Tr. 834 ("[T]he Administrative Law Judge will take any further action needed to complete the administrative record and issue a decision.")). Claimant attended the hearing by telephone with her non-attorney representative.[4] (Tr. 37). An impartial vocational expert also participated in the hearing. (*Id.*). During the hearing, Claimant testified to the following. Since the previous hearing, her "migraines have gotten worse." (Tr. 39). She "keep[s] trying different medications" but has experienced issues with refilling her prescriptions due to insurance. (*Id.*). A few of her medications make her tired, and a couple lower her blood pressure. (Tr. 42). As to the frequency of her migraines, Claimant stated "[t]hey're technically every day, but the ones that are really, really bad that will put me in the bedroom and in bed, are probably about three or four a week." (Tr. 39). She claimed her migraines are triggered by "[a]nything bright," loud sounds, "any type of screen" for longer than one hour, "a lot of caffeine," and stress. (Tr. 39-40). Claimant testified that her migraines usually last anywhere from "a few hours to a few days." (Tr. 40). As for help around the house, Claimant stated that her mother-in-law sometimes helps with tasks such as laundry and dishes. (Tr. 44).

On May 11, 2023, ALJ Isaacs issued a second unfavorable decision concluding that Claimant was not disabled. (Tr. 15-27). In applying the five-step sequential analysis from 20 C.F.R. § 404.1520(a), ALJ Isaacs made the following findings. First, Claimant has not engaged in

---

[4] This hearing was also held telephonically due to the Covid-19 pandemic with Claimant's consent. (Tr. 37).

substantial gainful activity since November 15, 2019, the application date. (Tr. 17). Second, Claimant has the following severe impairments: PTSD, depression, anxiety, ADHD, and migraines. (Tr. 18). Third, Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 19). ALJ Isaacs specifically considered Listings 11.02, 12.04, 12.06, 12.11, and 12.15. (*Id.*). Fourth, Claimant has the RFC to perform medium work with the following exceptions:

> [S]he can never climb ladders, ropes, or scaffolds. She needs to avoid all exposure to large, moving machinery, vibration, and unprotected heights. She can have no interaction with the public and no more than occasional interaction with supervisors and co-workers. She can use judgment needed only to perform simple, routine tasks. She is limited to jobs not involving fast-paced tasks, as defined in the hearing as not assembly-line work or other work involving a quota that is hourly or more frequent.

(Tr. 21). Additionally, ALJ Isaacs determined that Claimant has no past relevant work; Claimant was born on March 10, 1994 and is defined as a younger individual age 18-49; Claimant has at least a high school education; and transferability of job skills is not an issue because Claimant does not have past relevant work. (Tr. 26). Finally, considering the Claimant's age, education, work experience, and RFC, ALJ Isaacs determined that there are jobs that exist in significant numbers in the national economy that the claimant can perform. (*Id.*).

Based on these findings, ALJ Isaacs determined that Claimant has not been under a disability, as defined in the Social Security Act, since November 15, 2019, the date the application was filed. (Tr. 27). On January 5, 2024, the Appeals Council denied Claimant's request for review, finding Claimant's reasons for disagreement did not provide a basis for changing ALJ Isaacs' decision. (Tr. 5-11). At that point, the denial became the final decision of the Commissioner, and Claimant appealed to this Court. (DN 1).

## II. Standard of Review

Administrative Law Judges make determinations as to social security disability by undertaking the five-step sequential evaluation process mandated by the regulations. *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 803-4 (6th Cir. 2008) (citing *Abbott v. Sullivan*, 905 F. 2d 918, 923 (6th Cir. 1990)); 20 C.F.R. §§ 404.1520(b), 416.920(b). Throughout this process, the claimant bears the overall burden of establishing they are disabled; however, the Commissioner bears the burden of establishing the claimant can perform other work existing in significant numbers in the national economy. *Id.* at 804 (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

When reviewing the Administrative Law Judge's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). Instead, the Court's review of the Administrative Law Judge's decision is limited to an inquiry as to whether the Administrative Law Judge's findings were supported by substantial evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted), and whether the Administrative Law Judge employed the proper legal standards in reaching her conclusion. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence exists "when a reasonable mind could support a decision as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993). The Supreme Court has clarified "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high[.]" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted).

### III. Analysis

Claimant challenges ALJ Isaacs' evaluation of Claimant's impairments throughout her opinion, asserting that ALJ Isaacs' decision is not based on substantial evidence. (DN 13, at PageID # 4441). First, Claimant argues ALJ Isaacs erred by failing to evaluate whether Claimant's migraine headaches medically equaled listing 11.02B in accordance with SSR 19-4p. (DN 13, at PageID # 4445). Second, Claimant argues ALJ Isaacs erred by failing to properly evaluate Claimant's subjective symptoms. (*Id.*).

#### A. ALJ Isaacs' Evaluation of Claimant's Migraine Headaches

At step three of the sequential evaluation process, the ALJ must evaluate whether the claimant has "an impairment(s) that meets or equals one of [the] listings in appendix 1" and "meets the duration requirement." 20 C.F.R. § 404.1520(a)(4)(iii). Claimant carries the burden of proving her impairment meets "all of the specified medical criteria" for a listing or medically equals "all the criteria for the one most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

At step three, ALJ Isaacs considered Claimant's migraine impairment under Listing 11.02 and came to the following conclusion.

> The claimant does not meet the requirements for this listing, as the record does not indicate that the claimant has a generalized tonic-clonic seizure once a month for at least 3 consecutive months or once every two months for at least 4 consecutive months, or dyscognitive seizures occurring at least once a week for at least 3 consecutive months or at least once every 2 weeks for at least 3 consecutive months. Additionally, the record indicates that the claimant's headaches do not occur with the frequency contemplated in listing 11.02.

(Tr. 19).

1. Discussion of the Record

Claimant alleges ALJ Isaacs failed to adequately evaluate her migraine headaches under Listing 11.02B in accordance with SSR 19-4p. (DN 13, at PageID # 4447). Claimant argues that her testimony and treatment history show the record establishes the frequency and duration required by Listing 11.02B. (DN 13, at PageID # 4448). Specifically, Claimant points to neurology records discussing her chronic headaches that lasted all 30 days of the month until she started taking Ajovy, a preventative migraine medication, at which time they occurred 18 days of the month. (*Id.* (citing Tr. 2908, 4283, 4320, 4352, 4358)). Additionally, Claimant notes she continually tried different forms of treatment from November 2017 through May 2022. (DN 13, at PageID # 4448-49 (citing Tr. 2860, 2912, 3924, 3935, 3944, 3061, 4358, 3952, 4148, 4198, 4212, 4226, 4354, 4348-49, 4316, 4289)). Claimant asserts ALJ Isaacs' error is not harmless because sufficient evidence in the record establishes Claimant's "ongoing migraines despite adherence to treatment occur at least as frequently as is required by Listing 11.02B and certainly have lasted at this frequently [sic] for the requisite three months." (DN 13, at PageID # 4449).

The Commissioner argues that Claimant "failed to meet her burden to show that her migraine headaches met or equaled a listed impairment for the headache disorder." (DN 16, at PageID # 4470). Further, the Commissioner argues that ALJ Isaacs made the requisite evaluation of Claimant's headache disorder at step three because she considered whether Claimant's impairments met or medically equaled Listing 11.02B. (*Id.*). The Commissioner maintains that ALJ Isaacs' findings are supported by substantial evidence on the record, and Claimant cannot meet or medically equal Listing 11.02 or otherwise meet the requirements of SSR 19-4p. (DN 16, at PageID # 4472).

The appendix of listed impairments does not include an entry for primary headache

disorder. Social Security Ruling 19-4p was enacted to fill this void and guide an ALJ's consideration of headache disorders in the sequential evaluation process. SSR 19-4p, 2019 WL 4169635 (Aug. 26, 2019). Pursuant to SSR 19-4p, an ALJ "may find that a primary headache disorder, alone or in combination with another impairment(s), medically equals a listing." *Id*. at *7. The Ruling identifies that the "most closely analogous listed impairment" for a medically determinable impairment of primary headache disorder is Listing 11.02 – Epilepsy. *Id*. Listing 11.02B, at issue here, requires evidence of dyscognitive seizures occurring at least once a week for at least three consecutive months despite adherence to prescribed treatment. 20 C.F.R. Part 404, Subpart P, App. 1 § 11.02B**.** Dyscognitive seizures are defined as "alteration of consciousness without convulsions or loss of muscle control" that may include "blank staring, change of facial expression, and automatisms (such as lip smacking, chewing or swallowing, or repetitive simple actions, such as gestures or verbal utterances)[.]" *Id*. at § 11.00H(1)(b).

To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02B, the ALJ must consider:

> A detailed description from an [acceptable medical source] of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations).

*Id*. The Sixth Circuit upheld an ALJ's sparse step three evaluation when an ALJ made "sufficient factual findings elsewhere in his decision to support his conclusion at Step Three." *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014) (citing *Bledsoe v. Barnhart*, 165 F.

8

App'x 408, 411 (6th Cir. 2006) (looking to findings elsewhere in the ALJ's decision to affirm a step three medical equivalency determination and finding no need to require the ALJ to "spell out every fact a second time")); *see* SSR 17-2p, 2017 WL 3928306 (Mar. 27, 2017) (when the ALJ discusses her reasoning elsewhere in her decision, then "a statement that the individual's impairment does not medically equal a listed impairment constitutes a sufficient articulation for [the step three] finding.").

ALJ Isaacs identified Listing 11.02 in her step three analysis. (Tr. 19). Although ALJ Isaacs's evaluation of Claimant's migraine headaches under Listing 11.02 was brief and did not specifically discuss SSR 19-4p, the remainder of ALJ Isaacs' decision provided additional support for her step three determination.

ALJ Isaacs' RFC determination considered various aspects of the Listing 11.02B and SSR 19-4p analysis. In contemplation of Claimant's medical record, ALJ Isaacs considered examinations conducted by several medical professionals, including more than five by her neurologist Dr. Shah, which observed "normal" and "unremarkable findings." (Tr. 22-23 (citing Tr. 2896-2900, 2911, 2976, 2982, 3001, 3904, 4273, 4279, 4285-87, 4361, 4366, 4383)). ALJ Isaacs considered Claimant's typical headache event and associated phenomena, including her reports that she experienced "significant pain with associated nausea and vision disturbance" and the need to "lie down in a dark room . . . for days at a time" during her migraines. (Tr. 21). As for the frequency of Claimant's headaches, ALJ Isaacs noted Claimant reported that she "experienced migraines on a daily basis with three-to-four severe migraines each week." (Tr. 22). ALJ Isaacs found that this reported severity and frequency of migraines were unsupported by Claimant's treatment modalities, which included "medication and injections and a couple infrequent emergency room visits." (Tr. 23). Further, ALJ Isaacs noted that Claimant "reported improvement

9

of her symptoms with treatment." (*Id*. (citing Tr. 4354)). ALJ Isaacs observed that Claimant "denied Botox injections because she was afraid of injections." (Tr. 22). Finally, ALJ Isaacs discussed various limitations in functioning that Claimant experienced due to her migraines, including the need for lying down in her bed and an impaired ability to concentrate and complete tasks. (*Id*.).

Support for Claimant's migraine headaches satisfying Listing 11.02B primarily comes from Claimant's subjective complaints, which ALJ Isaacs found to be inconsistent with the medical evidence and other evidence of record. (*Id*.). A full discussion regarding ALJ Isaacs' evaluation of Claimant's subjective complaints is laid out below in Section B of this order.

Taken together, the discussion at step three and at the RFC determination provided sufficient factual findings to support ALJ Isaacs' conclusion that Claimant did not meet Listing 11.02B. ALJ Isaacs adequately discussed why she believes that the evidence does not reasonably support a finding that Claimant's migraine headaches medically equal a listed impairment.

## 2. Duty to Develop the Record

Claimant argues that ALJ Isaacs had a duty to develop the record. Specifically, "given the breadth of information in the record related to migraines," Claimant avers ALJ Isaacs should have obtained a medical opinion evaluating migraines for medical equivalence to Listing 11.02. (DN 13, at PageID # 4450). The Commissioner responds that the record was adequately developed and sufficient for ALJ Isaacs to make a determination and she did not need an additional medical opinion regarding whether Claimant met a listing. (DN 16, at PageID # 4473 (citing SSR 17-2p, 2017 WL 3928306, at *4)).

If an ALJ "believes that the evidence does not reasonably support a finding that the individual's impairment(s) medically equals a listed impairment," the ALJ is not required to obtain

medical opinion evidence prior to making a step three finding that the claimant's impairment(s) does not medically equal a listed impairment. SSR 17-2p, 2017 WL 3928306, at *4. While an ALJ must ensure that every claimant receives a "full and fair hearing," the ultimate burden of proving entitlement to benefits lies with the claimant. *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 563 (6th Cir. 2022). Although social security proceedings are inquisitorial rather than adversarial, that does not mean that the ALJ advocates for the claimant. *Id.* ("Promoting the claimant's case, of course, is not the ALJ's obligation. The ALJ, remember, is a neutral factfinder, not an advocate.").

It is only under "extreme circumstances" that the ALJ could be said to have a "special duty" to help develop the record. *Id.* at 563-64 (discussing *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1051-52 (6th Cir. 1983)). Claimant, however, disregarding *Moats* and its relegation of *Lashley* to "extreme" situations, cites *Lashley* to argue that ALJ Isaacs erred by not developing the record. (DN 13, at PageID # 4450). Her argument fails. In *Lashley*, the claimant was not represented by counsel and only had a fifth-grade education. 708 F.2d at 1050-52. A series of strokes left Lashley unable to articulate his thoughts and impaired his ability to read. *Id.* Here, in contrast, Claimant declined representation in her first hearing but was represented by a non-attorney in her second hearing. (Tr. 37, 59-60). Additionally, Claimant has at least a high school education and could articulate her thoughts while testifying. (*See* Tr. 26). Claimant has not shown that her case was an "extreme" situation in which ALJ Isaacs had a heightened duty to develop the record. ALJ Isaacs did not commit error by not obtaining a medical opinion to evaluate Claimant's migraine headaches.

The Court finds that ALJ Isaacs appropriately identified and applied the relevant standards for evaluating the Claimant's headaches pursuant to Listing 11.02 and SSR 19-4p.

### B. ALJ Isaacs' Evaluation of Claimant's Subjective Symptoms

In assessing an individual's RFC, the ALJ must consider the claimant's subjective allegations alongside medical records and physician opinions. 20 C.F.R. §§ 404.1529, 416.929; SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). A claimant's statement that she is experiencing pain or other symptoms will not, taken alone, establish that she is disabled; there must be medical signs and laboratory findings that show the existence of a medical impairment that could reasonably be expected to give rise to the pain or other symptoms alleged. *Id*. §§ 404.1529(a), 416.929(a).

A two-step process governs assessment of the limiting effects of a claimant's subjective symptoms. First, the ALJ determines whether an underlying medically determinable impairment exists that could reasonably be expected to produce the claimant's symptoms. *See* SSR 16-3p; *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (citing 20 C.F.R. § 416.929(a)). If the first step is met, the ALJ then evaluates the intensity and persistence of the claimant's symptoms to determine the extent to which they limit the claimant's ability to perform work-related activities. *See* SSR 16-3p; *Rogers*, 486 F.3d at 247. In doing so, the ALJ evaluates the entire case record, including the objective medical evidence, the claimant's statements about her symptoms, statements and information provided by medical sources and other persons, and any other relevant evidence in the individual's case record. *Id*. The ALJ also considers other factors relevant to the claimant's symptoms, such as daily activities, frequency of pain, and measures used to relieve pain. 20 C.F.R. § 416.929(c)(3).

Claimant asserts that ALJ Isaacs failed to properly assess Claimant's subjective symptoms regarding the frequency and severity of her migraines. (DN 13, at PageID # 4455-58). Specifically, Claimant argues that ALJ Isaacs "mischaracterized and cherry-picked the evidence as well as

substituted her own lay opinion." (DN 13, at PageID # 4458). In response, the Commissioner argues that ALJ Isaacs "provided a detailed discussion of the evidence as it related to [Claimant's] subjective complaints . . . [and] gave adequate reasons for finding [Claimant's] subjective statements were not entirely consistent with the medical evidence and other evidence o[f] record." (DN 16, at PageID # 4474 (citing Tr. 21-26)).

ALJ Isaacs considered Claimant's hearing testimonies regarding her alleged frequent migraine headaches that "forced her to lie down in a dark room for entire days." (Tr. 21-23 (citing Tr. 35-49, 57-78)). ALJ Isaacs found that Claimant's medically determinable impairments "could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 22). ALJ Isaacs then proceeded to thoroughly evaluate the record relating to Claimant's history of migraine headaches.

ALJ Isaacs discussed the record evidence for Claimant's physical impairments. She noted that Claimant "told providers that her pain symptoms rated as high as a 10/10 on a pain scale" and that "her headaches could last an entire day and occurred on every day of the month." (*Id.* (citing Tr. 2908, 3901)). Further, ALJ Isaacs discussed Claimant's January 2020 consultative examination with Curtis Gale-Dyer, D.O., where Claimant reported "chronic headaches with associated photosensitivity, marginal photosensitivity, and nausea" as well as headaches that caused "approximately two weeks of debilitation each month." (*Id.* (citing Tr. 2899)). However, Dr. Gale-Dryer's examination found that Claimant "exhibited round and reactive pupils, non-distressed appearance, full range of motion of her joints, normal reflexes, full motor strength, intact sensation, normal gait, negative straight leg raise testing, no neurological deficits, and ambulation without assistive devices." (*Id.* (citing Tr. 2896-2900)).

ALJ Isaacs also highlighted objective evidence that is inconsistent with Claimant's statements about her migraine headaches, including examination findings which "showed the claimant was alert, oriented, and exhibited intact cranial nerves, normal coordination of reflexes, intact sensation and steady gait, which does not support the degree of exertional limitations reported." (Tr. 23 (citing Tr. 2911, 2976, 2982, 3904, 4273, 4279, 4286-87, 4361, 4366, 4383)). Further, ALJ Isaacs noted that "[d]iagnostic imaging of the brain in December 2019 showed unremarkable findings." (Tr. 22 (citing Tr. 3001)).

ALJ Isaacs found that "while the record does show treatment with medication and injections and a couple infrequent emergency room visits, these treatment modalities do not support the reported severity or frequency of the claimant's migraine impairments." (Tr. 23, *see* Tr. 22). She also noted that Claimant "reported improvement of her symptoms with treatment," citing Claimant's continued use of Ajovy as an indication that the medicine is "working effectively." (Tr. 23 (citing Tr. 4311), *see* Tr. 22, 4354).

ALJ Isaacs further addressed credibility factors throughout her decision, including the level and frequency of treatment Claimant received for her migraine headaches. For instance, ALJ Isaacs noted that,

> [g]iven how far in advance most medical appointments are scheduled, the fact that the claimant never had a migraine at the appointment suggests that they are far less frequent or intense than alleged. (Moreover, I noted that the medical records indicated few efforts to reschedule due to an inability to attend her appointments because of her headaches.) Furthermore, the claimant's conservative treatment with medication does not support the severity of the limitations alleged. As noted, the claimant remains on Ajovy, which would indicates [sic] that this is working effectively.

(Tr. 23-24). Additionally, ALJ Isaacs considered Claimant's daily activities, noting that although she "reported significant symptoms resulting in limitations on activities of daily living" such as

14

her ability to lift and walk, Claimant "retained the ability to complete daily grooming, prepare meals, and perform minimal household chores, which supports greater ability to perform sustained activity." (Tr. 23 (citing Tr. 35-49, 57-78, 1042-1050, 2905)). ALJ Isaacs also noted that Claimant can take care of her 4-year-old and 9-year-old children, who "presumably require almost constant supervision while home[.]" (Tr. 23).

This Court is "limited to evaluating whether or not the ALJ's explanations for partially discrediting [Claimant] are reasonable and supported by substantial evidence in the record." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003); *see also Gooch v. Sec'y of Health and Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987) ("we will not normally substitute our impressions on the veracity of a witness for those of the trier of fact"). Because ALJ Isaacs discussed the subjective and objective medical evidence at length, weighed Claimant's testimony against the record evidence, and considered Claimant's subjective complaints using the regulatory factors, the Court finds that ALJ Isaacs' evaluation of Claimant's subjective allegations is supported by substantial evidence and complies with applicable regulations.

## IV. Order

Based on the above analysis, the Court finds ALJ Collins' decision is supported by substantial evidence in the record and comports with the applicable regulations. Accordingly, the Court **ORDERS** that the final decision of the Commissioner is **AFFIRMED**. This is a final and appealable Order and there is no just cause for delay.

Copies:		Counsel of Record

15